IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **Muhammad Aman Nomani** | ) | |
| Plaintiff, | ) | **Civil Action** |
| | ) | **File No.** |
| v. | ) | |
| | ) | |
| **Berkshire Hathaway Inc. and** | ) | **JURY DEMANDED** |
| **Star Furniture Company** | ) | |
| Defendants. | ) | |

## PLAINTIFF'S ORIGINAL COMPLAINT

NOW COMES PLAINTIFF, Muhammad Aman Nomani, and for cause of action against Berkshire Hathaway Inc. and Star Furniture Company (collectively, "Star Furniture" or "Defendant"), alleges and shows to the Honorable Court as follows:

### I.
### Introduction

1. This action seeks equitable relief, compensatory and punitive damages, liquidated damages, attorney's fees, expert witness fees, taxable costs of court, and pre-judgment and post-judgment interest for discrimination based on race, color, national origin and religion, and for retaliation that Plaintiff suffered regarding the terms and conditions of his employment.

### II.
### Parties

2. Muhammad Aman Nomani (hereinafter "Plaintiff" or "Mr. Nomani"), is a resident of Harris County, Texas.

3. Defendant, Berkshire Hathaway Inc., is a validly existing corporation organized under the laws of the State of Delaware and has its principal place of business in Omaha, Nebraska. This Defendant may be served with summons by serving its duly appointed registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington,

1

Delaware 19801.

4.     Defendant, Star Furniture Company, is a validly existing corporation organized under the laws of the State of Texas. This Defendant may be served with summons by serving its duly appointed registered agent, Mr. Melvyn L. Wolff, at 16666 Barker Springs Road, Houston, Texas 77084.

5.     Star Furniture Company is a wholly owned subsidiary of Berkshire Hathaway Inc. Together, these defendants were Plaintiff's employer.

6.     Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that such Defendant's officers, directors, vice-principals, agents, servants, and/or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of such Defendant or was done in the routine course and scope of employment of Defendant's partners, officers, directors, vice-principals, managers, agents, servants, or employees.

### III.
### Jurisdiction and Venue

7.     This Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. §1331 (federal question) because Plaintiff brings his claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., and 42 U.S.C. § 1981.

8.     The Court has personal jurisdiction because each Defendant maintains sufficient minimum contacts with Texas and regularly conducts business in the district of this Court.

9.     Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391 because each Defendant does business in Houston, Harris County, Texas, and because the causes of action alleged herein occurred in Houston, Harris County, Texas. Also, *See* Tex. Civ. Prac. & Rem. Code § 15.002(a)(1).

10. Further, so long as venue is proper against any one Defendant, the Court also has venue against the other Defendant because Plaintiff's claims arise out of the same transaction, occurrence, or series of transactions. *See* Tex. Civ. Prac. & Rem. Code § 15.005.

11. The Court also has supplemental jurisdiction over all pendant state law claims under 28 U.S.C. §1367.

## IV.
## Procedural Requisites

12. On February 14, 2013, Plaintiff filed a charge of race, color, religion, and national origin discrimination, and of retaliation, against its former employers, Berkshire Hathaway Inc. and Star Furniture Company (Charge Number 460-2013-01441 filed February 14, 2013, with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission, Civil Rights Division).

13. On October 29, 2013, the EEOC issued a Notice of Right to Sue letter entitling Plaintiff to file this civil action against Defendant for race, color, religion, and national origin discrimination, and for retaliation.

14. The filing of this lawsuit has been accomplished within ninety (90) days of Plaintiff's receipt of the above referenced Notice of Right to Sue letter.

15. All conditions precedent to filing this civil action are met, and this lawsuit has been timely filed.

## V.
## Facts

16. Mr. Muhammad Aman Nomani is a 59-year-old Pakistani-American male citizen of the United States.

17. Mr. Nomain is a Muslim who follows the Islamic faith.

18. During his employment with Star Furniture, Mr. Nomani was subjected to discrimination, harassment and retaliation because of his race, color, religion and national origin, and because he engaged in protected activity, all in violation of Title VII of the Civil Rights Act of 1964, *as amended*, and 42 U.S.C. § 1981, *as amended*.

19. Plaintiff began his employment with Star Furniture as a "Sales Consultant" on January 19, 2005, and his employment was wrongfully terminated on April 30, 2012.

20. After some days of training, Star Furniture placed Mr. Nomani at their Store No. 6, located at 19660 Southwest Freeway, Sugar Land, Texas 77479. During his time worked at this location of Star Furniture, Mr. Nomani reported to Mr. Bill Barnum, the Store Manager.

21. On April 21, 2010, upon Mr. Nomani's request, he was transferred to Star Furniture's Store No. 4, located at 6868 Southwest Freeway, Houston, Texas 77074. At this location of Star Furniture, Mr. Nomani reported to Mr. Robert Taylor, the Store Manager.

22. During his employment with Star Furniture, Mr. Nomani was a top sales producer; with his hard work, loyalty and dedication to Star Furniture, Mr. Nomani developed a large and loyal customer base for the benefit of his employer. These customers often referred others customers to Mr. Nomani, and they themselves returned to make additional purchases from Plaintiff from Star Furniture.

23. As a result, Mr. Nomani became a member of Star Furniture's President's Club, which is a designation bestowed upon only those sales associates selling more than $1.1 million in inventory a year at Star Furniture.

24. Mr. Nomani is of the Muslim faith, and in accordance with the requirements of the Islamic religious practice, he prays five (5) times a day. Muslims observe five formal prayers each day. The timing of these prayers is spaced fairly evenly throughout the day, so that one is

constantly reminded of God and given opportunity to seek his guidance and forgiveness. Muslims observe their formal prayers at the following times: a) <u>Fajr (pre-dawn)</u>: This prayer is performed before sunrise; b) <u>Dhuhr (afternoon)</u>: After the day's work has begun, one breaks shortly after noon to again remember God and seek His guidance; c) <u>Asr (evening)</u>: This prayer is performed in the evening; d) <u>Maghrib (sunset)</u>: Just after the sun goes down, Muslims remember God again as the day begins to come to a close; and e) <u>'Isha (evening)</u>: Before retiring for the night, Muslims again take time to remember God's presence, guidance, mercy, and forgiveness.

25. None of these prayers take particularly long, and each can be accomplished within five (5) minutes. Mr. Nomani prays at the times Islam prescribes during the day; he prays during these times wherever he is at the time, whether at home, at a restaurant, at a guest's home, at work, or elsewhere.

26. For those prayers that had to be performed during work hours, Mr. Nomani started praying in Star Furniture's break room at Store No. 6. Mr. Bill Barnum, the Store Manager told Mr. Nomani not to pray in the break room. Plaintiff brought his prayer mat to work and asked him if he could dedicate a place where he could pray. Mr. Barnum took Mr. Nomani upstairs in an electric room full of rat droppings and spider webs and said "here".

27. Mr. Nomani cleaned up the space, placed his prayer mat there, and continued to pray there for approximately 3 weeks until someone took the mat away. Mr. Nomani then had no choice but to go to his car and offer prayers in the car. A month later, Mr. Nomani's prayer mat surprisingly re-appeared. When Mr. Nomani complained to Mr. Barnum about this, Mr. Barnum stated he cannot do anything about it.

28. Furthermore, Mr. Barnum continually criticized Mr. Nomani for praying and for not

eating the non-halal (non-kosher) food that Star Furniture occasionally served to its employees.

29. Worse yet, Mr. Barnum called Mr. Nomani a terrorist from a third-world country, threatened to have Mr. Nomani deported several times and made fun of his ethnicity, religion and values.

30. On numerous occasions, Mr. Barnum refused to pay the commissions Mr. Nomani had earned for sales he had made, and Mr. Barnum instead gave the commissions to Plaintiff's co-workers who had no reason to receive those commissions.

31. Mr. Barnum singled out Mr. Nomani in his treatment of Plaintiff's work requirements, and Mr. Barnum exerted unfair and unequal pressure on Mr. Nomani at his job by Mr. Barnum's targeted behavior and because of his hatred toward Plaintiff for his religion, and because of who Plaintiff is.

32. Mr. Barnum would often call Mr. Nomani in his office and pressure Mr. Nomani to split his sales commissions with other sales consultants who did not work on the sale, and were not entitled to receive such sales commissions. Mr. Barnum believed thoroughly in wage theft, and was an active proponent of such theft, engaging in it on a regular basis to Mr. Nomani's detriment. Plaintiff can reasonably assume that Mr. Barnum's employer would disapprove of such indecent and illegal behavior.

33. Shortly before Mr. Nomani's transfer within Star Furniture, on one occasion during his shift, Mr. Nomani was at the number 2 position to greet and assist the next customer that would be entering the store. Mr. Nomani's co-worker, Mr. Jerry Singer was first in line ahead of him, and when the next customer did walk into the store, Mr. Singer greeted the customer, but another sales consultant, Ms. Toto Dong, who was standing behind Mr. Nomani and was not next in line to assist the incoming customer, waved at the guest.

34. Mr. Nomani asked Ms. Dong not to do so as it is against company policy to jump ahead of the other co-workers. Ms. Dong complained of this to Mr. Barnum, who came running out of his office, shouting at Mr. Nomani that he had upset Ms. Dong. When Mr. Nomani and Mr. Singer informed Mr. Barnum of what had happened, Mr. Barnum called in the other manager of the store and asked that Mr. Nomani apologize to Ms. Dong.

35. Mr. Nomani refused to do so, stating that Ms. Dong was the person who had violated Star Furniture's company policy, and that she should apologize to Mr. Singer for trying to steal his customer, and asked why should Mr. Nomani apologize when he had done nothing wrong.

36. Mr. Barnum became furious and told Mr. Nomani that if he wanted to stay employed with Star Furniture, he must apologize. Mr. Nomani responded that he would not apologize.

37. Shortly thereafter, Mr. Nomani sought to be transferred to another store because it became obvious that Mr. Barnum was singling him out, and in addition to harassing Plainiff for being a Pakistani-American and a Muslim, Mr. Barnum was treating Plaintiff unfavorably as compared to his peers who were outside his protected class of religion, race, color and national origin.

38. Mr. Barnum stated that because of his bad reference, no one would hire Mr. Nomani in Star Furniture.

39. Despite complaining to Mr. Barnum's supervisor (Mr. Terry Patrick) and to Star Furniture's President (Mr. Bill Ward) about Mr. Barnum's continuous and offensive discriminatory behavior directed toward Mr. Nomani, Star Furniture and its management did nothing to investigate Plaintiff's claims of discrimination. Instead, Mr. Nomani was told not to put anything in writing to Star Furniture's human resources department or to the Chairman of Star Furniture.

40. Mr. Nomani then asked for a transfer to another Star Furniture store because Mr. Barnum had made it very difficult and uncomfortable for Plaintiff to continue to work for Mr. Barnum, and that Mr. Barnum humiliated Plaintiff on a regular basis.

41. Thereafter, Mr. Nomani was able to transfer to Star Furniture's Store No. 4, located at 6868 Southwest Freeway, Houston, Texas 77074; and shortly after his transfer, Mr. Nomani took his earned vacation and visited Pakistan, and upon his return, Mr. Nomani resumed his employment at Store No. 4 for Mr. Robert Taylor, store manager.

42. On April 30, 2012, Mr. Nomani's employment was terminated because Mr. Barnum and Mr. Taylor accused Plaintiff of wrongdoing. Mr. Nomani was accused to stealing another sales associate's commission on a particular sale, which is false.

## VI.
## Causes Of Action

### Count One
### Race, Color, National Origin and Religious Discrimination
### in Violation of 42 U.S.C. § 2000e, *et seq*.

43. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

44. Plaintiff is a Pakistani-American male who follows the Islamic faith.

45. Because of Plaintiff's race, color, national origin and religion, he belongs to a group of persons that 42 U.S.C. § 2000e, *et seq*. (Title VII of the 1964 Civil Rights Act, as amended) intended to protect against discrimination in the terms and conditions of employment.

46. By the above-described acts, Defendant discriminated against Mr. Nomani because of his race, color, national origin and religion, by tolerating and failing to take affirmative action to correct these unlawful employment practices, by discriminating against Plaintiff with respect to terms, conditions and privileges of his employment because of his race, color, national origin and

religion, through denial of his employment rights and benefits, promotions and achievement, and by terminating his employment, all in violation of 42 U.S.C. § 2000e, *et seq*. (Title VII of the 1964 Civil Rights Act as amended).

47. Further, Defendant acted with reckless indifference to the federally protected rights of Plaintiff.

48. At all relevant times, Plaintiff was qualified for his position with Defendant, and his job performance was excellent, enough indeed to satisfy Defendant for a period of over seven (7) years during which he generated in excess of $7 million in sales for Defendant.

49. Plaintiff was treated differently than others outside his protected class, and he suffered discrimination because of his race, color, national origin and religion.

50. Because of Defendant's discriminatory actions, Plaintiff has suffered adverse employment actions, including his inability to earn a living at Star Furniture, inability to be fully compensated for his work, and the unjustified termination of his employment from a position of relative seniority.

51. Plaintiff also suffered loss of wages, both in the past and in the future, as well as emotional pain, mental anguish, suffering, inconvenience, loss of enjoyment of life in the past, and in all probability, in the future.

## Count Two
### Race Discrimination in Violation of 42 U.S.C. § 1981

52. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

53. Plaintiff's race is Asian, and as such, Plaintiff belongs to a group that 42 U.S.C. § 1981 intended to protect.

54. By the above-described acts, Defendant discriminated against Plaintiff because of race by

tolerating and failing to take affirmative actions to correct unlawful employment practices, by discriminating against him with respect to terms, conditions and privileges of his employment because of his race, through denial of his employment rights and benefits, promotions and achievement, and by terminating him all in violation of 42 U.S.C. § 1981.

55. Further, Defendant acted with malice or, in the alternative, with reckless indifference to the federally protected rights of Plaintiff.

56. As a result of Defendant's discriminatory acts, Plaintiff has suffered loss of wages, both in the past and in the future, as well as emotional pain, mental anguish, suffering, inconvenience, loss of enjoyment of life in the past, and in all probability, in the future.

### Count Three
### Racial Harassment

57. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

58. Plaintiff's race is Asian, a group that 42 U.S.C. § 1981 intended to protect.

59. As such, Plaintiff is a member of an ethnic group that is, and is commonly perceived as being, ethnically and physiognomically distinct.

60. Defendant's harassment and ill-treatment of Plaintiff violates 42 U.S.C. § 1981, for which Plaintiff seeks compensatory and punitive damages.

61. The facts and circumstances set forth above, without limitation, were sufficient to create a hostile work environment for Plaintiff because of his race.

### Count Four
### Retaliation

62. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

63. After Plaintiff complained to Defendant about the conduct, Defendant engaged in activities, including the termination of his employment, in retaliation as outlined above in violation of the Texas Labor Code, including without limitation, § 21.055 of the Texas Labor Code, and in violation of § 704 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a).

### Count Five
### Negligence

64. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

65. Defendant facilitated the discrimination Mr. Nomani suffered by the negligent hiring, supervision, and training of its employees, as each such employee was clearly incompetent to occupy the position bestowed upon him as a result of unsound judgment, negligent hiring, and negligent promotion practices.

66. Such employees include Messrs. Bill Barnum, Robert Taylor, Terry Patrick, and Bill Ward, each of whom will be deposed during the progress of this matter.

### VII.
### Damages

67. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

68. As a result of Defendant's violations of the above-stated federal statutes, Plaintiff seeks back pay, including wages and benefits, reinstatement or front pay, including benefits, equitable relief, compensatory and punitive damages, liquidated damages, expert witness fees, taxable costs of court, pre-judgment and post-judgment interest, and other and further relief as the court deems appropriate under the circumstances.

## VIII.
## Attorney's Fees

69.     As a further result of Defendant's acts and omissions, as specifically set forth herein, it was necessary for Plaintiff to secure counsel to present and prosecute this matter on his behalf.

70.     Plaintiff retained the services of undersigned counsel of record, and accordingly, Plaintiff sues to recover his reasonable attorney's fees and costs pursuant to Chapter 21, § 21.001, *et seq.* of the Texas Labor Code, and 42 U.S.C. § 1981a(b).

## IX.
## Jury Demand

71.     Plaintiff makes a formal demand for a jury trial in this matter.

## X.
## Prayer

WHEREFORE, PREMISES CONSIDERED, cause having been shown, Plaintiff Muhammad Aman Nomani prays that the Court enter a judgment:

- a. Declaring that each Defendant's actions were in violation of its legal duty to comply with the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981;

- b. For actual and liquidated damages for the period of time provided by law, including appropriate back-pay and reimbursement for lost pension, insurance, severance and all other benefits incident to her employment;

- c. For reinstatement, or for front pay including benefits, in lieu of reinstatement;

- d. For compensatory and punitive damages for the willful, wanton, malicious and conscious disregard of Plaintiff's legal rights;

- e. For Defendant to take affirmative steps as are necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Mr. Nomani's future employment opportunities;

- f. For pre-judgment and post-judgment interest at the highest rates allowed by law;

- g. For the costs of the action, together with reasonable attorneys' fees; and

h.  For any further relief as the Court deems necessary and proper.

>Respectfully submitted,
>
>**ALI  S. AHMED, P.C.**
>
>By: /s/ Salar Ali Ahmed
>**Salar Ali Ahmed**
>Federal Id. No. 32323
>State Bar No. 24000342
>One Arena Place
>7322 Southwest Freeway, Suite 1920
>Houston, Texas 77074
>Telephone:    (713) 223-1300
>Facsimile:     (713) 255-0013
>
>**Attorney for Plaintiff
>Muhammad Aman Nomani**